## Kalfus v. Davie's Executor.

(Decided April 29, 1915.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division.)

1.  Husband and Wife—Action by Wife to Recover From Estate of
    Husband.—Where the wife sought to recover certain rents and
    income, the court properly held that she had no right to demand
    an accounting at the hands of the husband's administrator in
    the absence of a showing that he had collected or retained any
    of the same, and where her only allegation was that she did not
    know whether she had received all that was due her on account
    of said rents and income. The allegation amounted to nothing
    more than her belief or suspicion, and this is not sufficient to
    put her husband's estate on the defensive.
2.  Husband and Wife—Action to Recover from Estate of Husband.
    —Where the wife, under a contract and divorce decree, became
    entitled to the income from certain real estate in which the
    husband only had a life estate, upon the death of the husband
    her interest in the income ceased, and where the consideration
    was only a nominal one, and there was no fraudulent misrepre-
    sentation, the fact that she thought at the time that she was
    getting the estate for like would not entitle her to recover from
    his estate the difference between what she thought she was get-
    ting and what she actually got until his death.
3.  Contracts—Written Instruments—Action Upon.—In a suit
    founded upon a writing which conflicts with the averments of the
    pleadings, the writing must control.
4.  Damages—Deceit—False and Fraudulent Statements.—In a suit
    for deceit and damages therefor, it is necessary to allege and
    prove the false and fraudulent statements, and that defendant
    had a guilty knowledge of the facts at the time he misrepre-
    sented them. It is not sufficient to aver their falsity and reliance
    upon them as the truth.

W. McKEE DUNCAN, ARNOLD & CURTIS and C. B. SEYMOUR
for appellant.

DAVID W. EDWARDS for appellee.

Opinion of the Court by Judge Nunn—Affirming.

This case went off in the court below on demurrer to
appellant's petitions, amended and supplemental. It is
an aftermath of Davie v. Davie, 26 Ky. L. R., 213, 81 S.
W., 296; Kalfus v. Davie, 33 Ky. L. R., 663, 110 S. W.,
871; and Kalfus v. Kalfus, 92 Ky., 542.

For explanation of the appeal it will be necessary to

again strike some of the notes in the chords and discords of the Kalfuses. James S. Kalfus was married to the appellant, Cornelia W. Kalfus, in October, 1869. In October, 1885, while they were in perfect accord, Mr. Kalfus signed, acknowledged and delivered to his wife the following conveyance:

"That for and in consideration of the sum of One Dollar cash in hand paid, and for and in consideration of the natural love and affection which I bear my said wife, I hereby assign, transfer and convey to said C. W. Kalfus for and during her natural life one-half of the net income derived from my interest in the house and lot in Louisville, Ky., in Fourth street, between Walnut and Chestnut, said lot being about 64x200 feet, and being the same property owned jointly by J. S. Kalfus and Mrs. E. A. Davie. Said income herein conveyed is to be the separate estate of said C. W. Kalfus, and is to be paid over to her in person and her receipt therefor is to be valid to any agent who may have said property in his charge for the purpose of renting same."

In July, 1898, they were divorced, and the judgment of divorce mentioned and secured to Mrs. Kalfus the property rights acquired under the conveyance above copied. This was done by incorporating in the divorce judgment a written agreement of July 6th, which is as follows:

"I agree to accept in lieu of alimony and in full of all claims against the estate of James S. Kalfus the sum of Three Thousand Dollars ($3,000); to retain the interest I now hold under policy No. 364848 in the Equitable Life Insurance Company on the life of Jas. S. Kalfus as I now hold it, I to pay the future premiums as they mature out of my own means, and likewise I am to retain all the interest in the real estate conveyed to me by Jas. S. Kalfus during marriage as shown by the terms of the deed of conveyance, said property to be treated as not having been obtained in consideration of marriage, and I agree to hold said Jas. S. Kalfus harmless and indemnified from all claims that third persons may have or make against me on account of necessaries heretofore furnished me, and I authorize my attorney Jas. E. Gaither, to collect, enforce and settle my demands against James S. Kalfus as herein indicated."

This agreement was signed by Mrs. Kalfus, and approved by the court. In February, 1911, James S. Kal-

fus died intestate, leaving his sister, Addie K. Davie, his only heir-at-law. It appears from the petition that he owed no debts and left a large estate. In November, 1911, Mrs. Davie died, and her only heirs-at-law are two grandchildren.

The house and lot on Fourth street originally belonged to Jacob W. Kalfus (father of James S. Kalfus), and he devised it to his three children for life. These children were James S. Kalfus, Mrs. Davie, and Southern Kalfus, who died childless in 1897. The will of Jacob Kalfus provided that on the death of either of his children then that share should go, in fee simple, to the surviving brother and sister, or, if dead, to their children or grandchildren. Therefore, when Southern Kalfus died, his interest descended to James S. Kalfus and Mrs. Davie in fee.

Some time after the divorce judgment James Kalfus and Mrs. Davie sold the interest in the Fourth street property which they had inherited from Southern Kalfus for $20,000. Agreeable to his conveyance, he placed her half of his half of the proceeds, $5,000, with the Fidelity Trust Company, in trust, with direction to pay the income to Mrs. Kalfus for life. It seems that this trust fund has been kept intact and Mrs. Kalfus has or will receive the income from it for life. The remainder of the Fourth street property, under the will of Jacob Kalfus, has passed, in fee, to the grandchildren of Mrs. Davie, as we have already indicated. In other words, James Kalfus had only a life estate. That fact is the reason for this suit. Mrs. Kalfus contends that the purpose of the 1885 conveyance, and the decree of divorce in 1898, was to settle and provide for her a support during her life, and that at the time he made the conveyance to her he represented himself as the owner, in fee simple, of a one-half interest in the property. She says she relied upon the truth of this statement, and never questioned the fact. It is conceded that his interest in the property, except that which he inherited from Southern Kalfus, was a life estate, and because of his death her life income has failed to that extent. This suit, filed since her husband's death, and nearly 13 years after her divorce, seems to have two objects. On the idea that the conveyance was to secure to her a support for life out of his estate, rather than a support out of his life estate, she seeks first to have

such a construction of the conveyance as would give to her out of his other estate an amount equal to the net income from a half interest in the Fourth street property. There is no allegation of fraud or mistake, and no claim that anything was omitted from the contract, and there is no effort to have the divorce judgment modified as to property rights.

The second object rests upon her allegation that she does not know whether she received during the lifetime of her husband all of the income which was properly payable to her from the Fourth street property. She says there never was any accounting, and that the whole matter remains unsettled. She follows this with an allegation that the amount of money due and owing to her under the contract would have exceeded the amount paid to her. She asks that the case be referred to a commissioner for the purpose of settling the accounts, and that the administrator be required to disclose and account to appellant for the income derived from the Fourth street property during the lifetime of her husband. The lower court properly ruled that the appellant had no right to demand an accounting at the hands of her husband's administrator for such rents or income, in the absence of any showing that he had collected and retained any of it. She does not allege that the administrator has any memoranda of the matter, nor that the decedent kept any account or record of it. Her allegation amounts to nothing more than her belief or suspicion that she has not received all that was due her on this account, and manifestly this is not sufficient to put her husband's estate on the defensive.

The original conveyance was upon a nominal consideration—a mere gift. All she acquired under it was "one-half of the *net income derived from my* (his) *interest* in the (Fourth street) house and lot."

The property is again referred to in the conveyance as "the same property owned *jointly* by J. W. Kalfus and Mrs. A. E. Davie," and the divorce decree stipulates that she is to "retain all the *interest in the real estate* conveyed to me (her) by J. S. Kalfus." It is not contended, and could not be, that there was a conveyance of real estate. The words used were merely descriptive of the real estate that produced the income in which she was given an interest. Under the decree of divorce she was to retain all the interest theretofore conveyed to

her by her husband, and that conveyance, in unmistakable terms, provides that her interest is only one-half of the income derived from the interest therein of her husband—whatever that may be.   No matter what interest and title they may have believed he had in the property, he could convey nothing in excess of the interest or title he actually had. Since a life interest in one-half of it was all the title he ever had, her interest in the income ceased when he died.   Realizing and considering this, she seeks to have the administrator pay to her, out of his other estate, the difference in value between what she did get and what she believed she was getting.   She alleges that for a good and valuable consideration her husband "undertook to and did assign, transfer, and convey to plaintiff, and did undertake to grant and make good to her for and during her natural life, one-fourth of the net income, or an amount equal thereto, in said Fourth street property, whatsoever might be the amount thereof, and whether said property was owned by said James Kalfus, wholly or in part, or not at all, or by whom rented or upon what terms or for what time or terms.   She says that at said time and all of the time he assured and represented to her that he was the absolute owner of an undivided one-half of said Fourth street property, and she relied on said assurances and representations so made by him, when she agreed to said divorce settlement.   She says she did not know anything at the time of said settlement, or until after his death, as to what title he had in said property, except as described in his deed to her, and that she would not have agreed thereto except on said assurances."

The conveyance and divorce decree, which are filed with the petition as exhibits, do not support the averments as to the character and extent of title which Mr. Kalfus undertook to convey.   It has been often held that in a suit founded upon a writing which conflicts with the averments of the pleadings, the writing must control.   Ky. Mut. Co. v. Logan, 90 Ky., 364, 12 R., 327, 14 S. W., 337; Boyd v. Bethel, 10 R., 470, 9 S. W., 417; Hudson v. Scottish Ins. Co., 110 Ky., 722, 23 R., 116, 62 S. W., 513; Gardner v. Con. Ins. Co., 25 R., 426, 75 S. W., 283.

As stated in a note to Section 204c, Newman on Pleadings and Practice:

"It is also the rule that in a suit on a written con-

tract, if the contract shows that no cause of action exists, the court, on demurrer, will consider the exhibit. In other words, while an exhibit cannot make a pleading good, it may make it bad."

The exhibit shows what he conveyed to her, and she is necessarily confined to that. By inference the petition charges misrepresentation, but nowhere is there a charge that Kalfus knew that any statement he made was false.

In an action for breach of warranty it is not necessary to allege that the warranty was made with a knowledge of its falsity, but this action is not of that character. Its purpose serves to name it an action for deceit and damages arising therefrom. In that character of suit it is not only necessary to allege and prove the false and fraudulent statements, but also that the defendant had a guilty knowledge of the misrepresentation. It is not sufficient to aver their falsity, and her reliance upon them as the truth. Trimbel v. Reed, 97 Ky., 713, 31 S. W., 861; Elliott on Contracts, Section 88; Newman on Pleadings and Practice, Section 325.

Mrs. Kalfus was the appellant in the case of Kalfus v. Davie, *supra,* and it was there adjudged that she had a right to share in the income, but no interest in the realty. It was further held that "if James S. Kalfus should die, appellant's right to his one-half of the income, arising from the estate, upon a happening of that event, ceased."

It may have been the opinion of Mrs. Kalfus that the effect of the conveyance and decree was to make provision for her for life, and that may have been the expectation of Mr. Kalfus, but the instrument contained no warranties to that effect, and nothing that could be so construed, and, as already stated, there is no pretense that anything was left out of the writing by oversight or mistake.

The income came to her as a gift, in the first place. In the second place, it was made to secure her against the operation of the divorce statutes. She may not demand another gift merely because she failed to look the first one in the mouth, and thereby, unwisely, laid forth more upon it than 'twas worth.

The ruling of the lower court in sustaining demurrers to the pleadings was correct, and the judgment is, therefore, affirmed.