## Northeast Lumber Company v. Harris.

(Decided June 10, 1927.)

### Appeal from Floyd Circuit Court.

1. Evidence.—Evidence of circumstances leading up to a contract between an individual and a lumber company for the cutting of timber is inadmissible in an action thereon between the parties, where the existence and validity of the contract are not questioned.

2. Logs and Logging.—Evidence of failure of lumber company's gratuitous efforts to aid party who contracted to cut timber by procuring men to assist him is inadmissible in his action for amount claimed to have been earned under the contract since one is not liable for failure of gratuitous efforts to serve.

3. Trial.—Court's remarks that issue in suit by contractor against lumber company for balance under timber cutting contract was difference between amount delivered and amount paid for held error, where company had filed counterclaim for damages due to contractor's failure to cut timber within contract period.

4. Damages.—In action for amount claimed to be due under timber cutting contract, in which the lumber company claims damages because of incomplete performance, resulting in mill's idleness, instructions must give jury criteria for measuring liabilities.

5. Trial.—In contractor's action against lumber company under timber cutting contract, company's instruction relating to its counterclaim for aggregate loss from mill's idleness held improper because of failure to specify loss per day; the duration of idleness being a question for the jury in determining loss.

A. J. MAY and ED L. ALLEN for appellant.

J. B. CLARKE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

The Northeast Lumber Company, which we will refer to as the lumber company, seeks by this appeal to secure the reversal of a judgment for $1,200 recovered against it by J. B. Harris. On February 1, 1923, Harris made a contract with the lumber company to cut certain timber for it on a tract of 240 acres located on Spewing Camp Branch in Floyd county. He agreed to use care in cutting the timber to prevent it from splitting and damaging, and to cut from 7,000 to 10,000 feet per day, unless prevented by conditions beyond his control. The timber was to be scaled or measured by the company

according to the Doyle-Scribner rule for measuring timber. All timber 22 feet in length or less was to be measured at the small end of the log, at the average diameter; timber 24 feet or more in length to be measured at the middle of the log. For this the company was to pay him $11 per 1,000 feet. He began work under the contract, but never did come near to complying with it. It appears that he did the principal part of his work on the left-hand side of the creek, and in October, 1923, the lumber company wrote him a letter in which it called his attention to the fact that the time given it for the removal of this timber would soon expire, and in that letter it made him this proposition:

> "If you will go ahead and complete the logging on the left-hand side of the creek going up within about ten days, we will pay you the contract price for all logs loaded, also any hold back that might be due you and in addition to that we will pay you $125, with the understanding that your contract with us is canceled, and you are to turn the job over to us, together with all tools, buildings, and equipment that we furnished in our contract."

Upon that letter Harris wrote the word "accepted," and signed his name to it. They were unable to settle, and Harris began this action. He claims he cut 507,663 feet of timber, which, at the contract price, would amount to $5,584.29, upon which he acknowledged the receipt of $4,327.18, leaving a balance of $1,257.11, for which he asked judgment in the first paragraph of his petition.

In the second paragraph of his petition he alleged that this $125 had not been paid, and that there was at least 507,000 feet of timber on the right-hand side of the creek which he was entitled to cut under that contract, and that it would have netted him a profit of $3 per thousand feet, and he asked judgment for $1,521 for the cutting of this timber, or if he could not get that, that he should have a judgment for the $125. The lumber company demurred to the second paragraph of the plaintiff's petition, but the court improperly overruled its demurrer so far as the claim for $1,521 is concerned. The lumber company then answered, and denied the matter set up in Harris' petition. It never did plead just how much timber had been cut, or what had been paid thereon. Further in its answer, by way of counterclaim, it pleaded

that Harris failed to cut and deliver from 7,000 to 10,000 feet of logs per day, and only cut 1,566 feet per day, as a result of which the time for the cutting of this timber was correspondingly prolonged, and the lumber company was compelled to pay $100 to secure an extension of time for the removal of its timber. Its mill was idle for 18 days, and on account of that it lost $1,920 which it was compelled to pay out in wages to men employed by the month, who were idle because of failure of Harris to cut the logs. It was compelled to pay the man who measured this timber $477.33 more than it would have had to pay if Harris had complied with his contract, and it made a counterclaim for these items, which aggregated $2,983.33. One of the things on which they were unable to agree was the method of measuring this timber. For example, they agreed that, if a log was 16 inches in diameter at the small end one way and 18 inches in diameter the other, it should be called a 17-inch log, but, when a log was 16 inches in diameter one way and 17 the other, it was Harris' contention that they should, by the Doyle-Scribner rule, ascertain how many feet would be in a log of that length, if 16 inches in diameter, and how many feet would be in a log 17 inches in diameter; that the two should be added together, and the result divided by two, and that that would be the correct number of feet in the log. That was not the contract these parties made. As we have stated, this contract provided that this timber should be measured according to the average diameter. Thus, a log 16 inches one way and 17 the other would have an average diameter of 16½ inches, but in the Doyle-Scribner rule the tables are given in even inches. There are no fractional inches. These parties contracted that this should be measured according to the Doyle-Scribner rule; therefore, a log 16 by 17 is only a 16-inch log, and the number of feet in it, according to this contract, will be found by reference to a 16-inch log of that length in the table referred to.

Harris was improperly allowed to go into the circumstances leading up to the contract, which had nothing to do with the case. No attack had been made on the contract, and all evidence about conversations and negotiations leading up to it were incompetent. Evidence was improperly admitted that the lumber company tried to help Harris get some additional men, but did not succeed. Such aid was no part of the contract. Harris

should be grateful for its efforts to assist him, but it is not responsible for the failure of these efforts.

At several times during the introduction of the evidence the court made remarks in the hearing of the jury that were calculated to prejudice the lumber company's case. We will quote two of these:

> "The only question in this case is how much did he deliver, and how much has he been paid." "I think this case is this: If a man hauls so many logs, what was he paid for it? That is all I want the jury to know."

These and other similar expressions appearing in this record were calculated to induce the jury to believe the lumber company's counterclaim was of no importance. The undertaking by Harris to deliver from 7,000 to 10,000 feet per day was just as much a part of this contract as the undertaking by the lumber company to pay him $11 per thousand for the logs delivered. If Harris failed to cut and deliver the quantity of logs per day he contracted to do, and as the proximate result thereof the lumber company was unable to operate its mill, and compelled to pay wages to employees that were idle either at its mill or at its loading yard in the woods, Harris is as much obligated to pay it for such losses as the lumber company is to pay him for the logs he did deliver.

The instructions given erroneously failed to give to the jury any criterion by which to measure the liabilities of these parties to each other, for which this judgment is reversed. Upon the return of the case, the court will require the lumber company to amend its pleadings and state just how much timber Harris cut and delivered to it; how much it paid him therefor; how much it had to pay per day in fixed salaries to its employees, while its mill was idle; how many days it claims that its man employed to measure and load this timber was idle, as a result of the failure of Harris to cut and deliver the quantity of timber he agreed; and what it was compelled to pay this man per day during such time.

We cannot approve the instruction A offered by the lumber company, because it failed to tell the jury how much the company claimed it cost it per day in fixed salaries to maintain its mill in idleness. The jury may not have believed the mill was idle 18 days, but may have

believed it was idle 11 days or 7 days or some other number of days, and this instruction is faulty, in that it gives the jury no criterion by which to estimate what would be due the lumber company for such enforced idleness.

The judgment is reversed.