## Northeast Lumber Company v. Harris.

(Decided December 5, 1930.)

A. J. MAY and EDWARD L. ALLEN for appellant.

J. B. CLARKE and J. C. HOPKINS for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is the second appeal of this case. The opinion on the first appeal is reported in 220 Ky. 454, 295 S. W. 455, where a statement of the facts will be found. Upon the return of the case, numerous amendments to the pleadings were filed, but the issues ultimately presented, were: Did plaintiff breach his contract, and, if so, what

were defendant's damages? At the second trial plaintiff recovered a judgment against the defendant for $1,007.11, and it has again appealed.

Under the contract dated February 1, 1923, Harris was to cut from 7,000 to 10,000 feet of timber per day, for which the appellant company was to pay him $11 per 1,000 feet. He actually cut and delivered much less than that amount of timber per day, and, as the company was required under its contract with the landowners to remove the timber within a specified time, a second agreement was entered into on October 15, 1923, by the terms of which Harris surrendered his right to cut the timber on the right-hand side of Spewing Camp branch going up, in consideration of $125 to be paid to him by the company. He was to complete the logging on the left-hand side of the creek within about ten days, and the company agreed to pay him the contract price for all logs loaded. This contract superseded the contract of February 1, 1923, and each party to it surrendered any right he may have had under the first contract growing out of any breach of its terms by the other party. The sole question in issue was whether or not either party had breached the terms of the October contract.

Appellant was indebted to Harris for all the timber cut and loaded by him at the rate of $11 per 1,000 feet, subject to any payments that had been made and to any damages appellant had suffered by reason of any failure on the part of Harris to comply with the October contract. The timber on the left-hand side of the creek was not logged within ten days nor until some time in February, 1924.

It is fairly well established by the evidence that Harris cut 507,663 feet of timber which at the contract price would amount to $5,584.29, and that appellant paid him $4,327.18, leaving a balance of $1,257.11. Appellant was required to pay to the owners of the land $100 for an extension of time within which the timber was to be removed, which outlay was occasioned by the failure of Harris to cut the timber within the stipulated time. The evidence also tends to show that appellant's mill was idle a few days because of appellee's failure to cut and deliver timber. Most of this occurred, however, prior to October, 1923. Appellant also claimed that it was compelled to pay the man who measured the timber $477.33 more than it would have had to pay if Harris had complied with his contract, but this man was discharged just.

after the October contract was made, and by that contract appellant waived any damages that had accrued up to that time, by reason of appellee's failure to comply with the February contract.

Appellee was entitled to a judgment for $1,257.11, which was the balance due for timber that had been cut and loaded and in addition thereto for $125 under the October contract, which was in consideration of the cancellation of the Febuary contract, or a total of $1,382.11, subject, however, to any credit for damages that appellant had suffered by reason of any failure on the part of appellee to comply with the October contract. The jury returned a verdict for plaintiff for the sum of $1,-007.11. It necessarily found, therefore, $375 for appellant on its counterclaim, which no doubt consisted of $100 paid by appellant to the landowners for an extension of time within which the timber was to be removed, and $275 damages occasioned by the mill being idle and demurrage on railroad cars which appellant was required to pay. The verdict was authorized by the pleadings and sustained by the evidence.

Appellant complains of the instructions, but they were given substantially in the form directed in the former opinion. In instruction No. 2, the court told the jury that, if they believed from the evidence that plaintiff breached his contract of February 1, 1923, or October 15, 1923, by failing, except for any reason beyond his control, to cut and deliver from 7,000 to 10,000 feet per day, and that on account of such failure the defendant's mill was caused to be shut down, or its man employed to scale and load the timber lost time, or that defendant was compelled to pay demurrage on railroad cars, or was compelled to pay an additional sum to landowners for an extension of time to get the timber cut, they should find for the defendant such sums in damages as they believed from the evidence it sustained by reason of such failure of plaintiff, if any. This instruction was more favorable to appellant than the one to which it was entitled, since it authorized the jury to find for it on its counterclaim if the jury believed Harris breached his contract of February 1, 1923.

As above stated, by the contract of October 15, 1923, appellant waived all damages that had accrued up to that time by reason of any breach of the February contract.

Judgment is affirmed.