# Laurel Cliffs Mfg. & Distributing Co. v. Prichard.

(Decided Oct. 19, 1934.)

LESTER HOGGE and W. C. HAMILTON for appellant.

CLAY & HOGGE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On February 27, 1931, the appellant and plaintiff below, Laurel Cliffs Manufacturing & Distributing Company, a corporation, claimed to be the owner of territorial rights for the selling of a patented device, known as "Rite Lite Headlight Device Patent No. 502787," with the privilege to retail the device within such territory, and the right to manufacture it. On that day plaintiff entered into a contract with one A. F. Fraley (now deceased) and defendant and appellee, G. W. Prichard, which (omitting signatures) was and is in these words:

"This contract and assignment made and entered into, this 27th day of February, 1931, by and between corporation known as Laurel Cliffs Manufacturing and Distributing Company, with their principle at Ordinary, Elliott County, Kentucky, hereafter known as party of the first part; and G. W. Prichard and A. J. Fraley, both of the city of Morehead, Rowan County, Kentucky, hereinafter known as parties of the second part.

"Witnesseth: That the party of the first part being organized and incorporated for the purpose of manufacturing and distributing, employing agents, salesmen, contracting and assigning territory in the United States of America and the District of Columbia from time to time to persons and salesmen to sell and have sold certain patent automobile headlight devices known as the Rite Lite Headlight Device Patent No. 502787, recorded in the Patent Office at Washington, D. C. Patented by Fred James of Moristown, Arizona.

"Now be it known to all whom it may concern, that the party of the first part has this day above written, contracted, let, assigned to the parties of the second part all of the State of Kentucky inclusive for the purpose of selling and have sold in the State aforesaid, the above

described Automobile Head Light Devices subject to the hereinafter provisions set forth as follows:

"Parties of the first part agree and is to furnish to the parties of the second part the above described automobile head light devices, F. O. B. factory, Cincinnati, Ohio, in quantities of not less than 200 the first month and 200 or more each month thereafter for a period of six months at the following prices F. O. B. factory Cincinnati, Ohio. [Here follow stipulated retail prices.]

"All orders to be filled on receipt of orders accompanied with the advance of the sum of fifty cents per pr. when ordered, as payment on above price set out, unavoidable delays and accidents excepted.

"Parties of the second part agrees and is to pay as advance payment the sum of fifty cents on each pair when ordered, balance of above purchase price to be paid F. O. B. factory, Cincinnati, Ohio.

"All devices to be sold at retail prices by all salesmen which prices is to be set by first party hereto from time to time and further that no salesman or agent is to sell or be allowed to sell or have sold at retail prices set from time to time by the first party hereto. It is further understood that the second party has the right to cancel this contract at their option during the life of same, provided however, they have purchased and paid for 1200 pr. devices as stated above during the period of this contract. Whereas, members of the Company may retail said devices in Kentucky, except where territory has been assigned to agents.

"Witness our hand and seal the day and year first above written."

On September 4, 1931, after the death of A. J. Fraley, plaintiff filed this ordinary action against defendant in the Rowan circuit court, alleging in its petition that by the terms of the contract, which it filed therewith as an exhibit, defendant and his partner, Fraley, agreed to purchase from plaintiff 1,200 pairs of the patented device at $2.30 per pair within the first six months of the life of the contract, but that they had only ordered and paid for 308 pairs at the stipulated price, and that they had failed and refused to order or pay for the remaining 892 pairs which at the designated price per pair amounted to $2,051.60, for which judgment was prayed. The demurrer of defendant to the petition, as originally

filed, was sustained, and plaintiff filed an amended petition, in which it incorporated, by reference, the statements contained in its original petition, and then said:

"That acting under said contract the defendant was to and did contract for and to purchase 1,200 pairs of said head lights at the agreed price of $2.30 per pair, same to be delivered at the rate of 200 pairs each month thereafter and defendant recognizing and agreeing that this was the meaning of said contract; that he should take said 1,200 pairs of said headlights as above set forth, he was furnished and received and accepted 308 pairs of said head lights at said price and after the expiration of the time within which said 1,200 pairs should be delivered, to-wit: six months from the date of said contract, for the first time notified the plaintiff of his intention to cancel same and that he would not take the remainder of said number, to-wit: 892 pairs of said head lights and that he would thereafter consider said contract cancelled, and that arising from said failure to take said head lights the plaintiff was thereby injured and the defendant became indebted to and is now indebted to the plaintiff $2,050.50 no part of which has been paid."

Defendant's demurrer filed to the petition as amended was overruled, and the answer as amended denied the contract as alleged by plaintiff, and stated that it was only the purchase of territorial rights, limited only to Kentucky, within which the purchasers might sell and exploit the patented article, and that the consideration was the promise to pay the stipulated prices for all of the articles that were sold or procured to be sold by the purchasers within that territory, either through their own efforts or those of any assignee of such rights to whom the second parties might make sales thereof, and that the contract nowhere obligated the second parties therein to order or pay for any specified number of patented devices within a specified or any other time. They then averred that they had paid for, as the petition disclosed, all of the devices that had been ordered and that they were under no duty to order, take, or pay for any additional number. There was also a paragraph in the answer alleging that defendant, Prichard, was not a principal in the contract, but that he was only surety for his co-obligor therein, A. J. Fraley, whereby he only bound himself to pay for the number of devices that Fraley might order and receive from plaintiff at

the agreed and stipulated prices. However, defendant did not ask for a reformation of the contract so as to make it appear that he was only surety therein for Fraley and for which reason the latter defense was improperly presented and the court erroneously treated it as an available one. Following pleadings made the issues, and under the instructions submitted to the jury, it returned a verdict in favor of defendant, followed by judgment dismissing the petition, from which plaintiff prosecutes this appeal.

Counsel for plaintiff in his brief filed in this court presents some curious and to our minds strange arguments in support of his position that the contract sued on was an absolute sale of as many as 1,200 pairs of the involved patented device. If his position were true, and the remaining number of the devices so agreed to be taken had been delivered to defendant and he had failed to pay for them or they had been tendered to him by plaintiff and he had refused to accept them, then this action as brought would be sustainable if the evidence supported his contentions; but the pleadings of plaintiff, unmodified by the exhibit, presented no such case. The nearest approach that was made by plaintiff's pleadings to the statement of a case was that defendants agreed to purchase and pay for the stipulated number of the patented devices (1,200 pairs) as ordered by them, and which was to be done within the first six months of the life of the contract, but which they had failed and refused to do as to 892 pairs agreed to be taken. In other words, a straight out sale is averred. In that event it is clear that plaintiff's remedy was one for the recovery of damages for a breach of the contract by defendant, the measure of which would be the difference between the contract price agreed to be paid for the device and its reasonable market value at the time it was agreed to be taken. See 55 C. J. p. 1020, sec. 1022, p. 1024, sec. 1023, p. 1050, sec. 1042. In the notes to the cited text will be found cases from practically all the courts in the country substantiating the rule as we have stated it, many of which are from this court. The principles of law governing the rights of the parties under such a situation are so universally approved and applied as to not require the insertion of particular cases from this or any other jurisdiction to support them, and to avoid the unnecessary consumption of time and space they will be omitted.

However, the fundamental error of plaintiff's counsel is more far reaching than the one we have discussed of mistaken remedy, and consists in his misinterpretation of the legal effect of the written contract upon which the right of action of his client is based. The contract nowhere obligates the parties of the second part therein (one of whom was defendant) to order, take, accept, or pay for any designated number of the patented device to which the contract relates. Plaintiff agreed therein to furnish the second parties a minimum number of the devices (200) per month during the first six months of the life of the contract, but the second parties did not agree therein to purchase, or order, that or any other number of the devices per month, or during any other period, but it was stipulated that if they ordered and paid for that minimum number of devices per month for the first six months (or the total number of 1,200 during that period), they could then rescind the contract and cease to be agents for the sale of the patented article within the territory contracted for. There cannot be any possible dispute as to the correctness of the outlined interpretation that we have given to the contract, since its terms are plain and unambiguous. That being true, the exhibit of the contract with the petition destroyed all allegations of the pleading in conflict with it under the universal rule of pleading, consistently approved and applied in this and other courts to the effect that an exhibit to a pleading cannot be given the effect of aiding or supplying defects therein, but may contradict its averments, and if the contradiction is such as to destroy the right attempted to be asserted in the pleading, the defect may be reached by a general demurrer thereto. Kentucky Mutual Co. v. Logan's Adm'r, 90 Ky. 364, 14 S. W. 337, 12 Ky. Law Rep. 237; Hudson v. Scottish Insurance Co., 110 Ky. 722, 62 S. W. 513, 23 Ky. Law Rep. 116; Kalfus v. Davie's Ex'r, 164 Ky. 390, 175 S. W. 652; Durham v. Elliott, 180 Ky. 724, 203 S. W. 539; Nixon v. Gammon, 191 Ky. 175, 229 S. W. 75; Howard v. Howard, 236 Ky. 557, 33 S. W. (2d) 635.

It was the duty of the court in this case to construe the contract of the parties, and to not submit that legal issue to the jury as was done in instruction No. 1, nor was it authorized to submit the issue of suretyship only of the defendant, Prichard, for the reasons hereinbefore stated. It was and is the exclusive function of

the court to construe written contracts, and if that had been correctly done in this case, the conclusion is unescapable that no liability was asserted by plaintiff in its petition, or in any of the amendments filed thereto. The judgment, therefore, was and is the result of a trial of the case on immaterial issues with defendant the beneficiary thereof. As we have seen, he was entitled to it under the pleadings in the case, regardless of any testimony that the court heard on the immaterial issues. Under our interpretation, supra, of the contract, he was entitled to the same judgment he received and under the rule requiring that a correct and proper judgment should be approved, although arrived at by the trial court for erroneous reasons, we find no cause to disturb the result reached on the trial of the case.

Wherefore, the judgment is affirmed.