**DENNIS et al. v. WATSON.**

Court of Appeals of Kentucky.

Nov. 20, 1953.

Rehearing Denied March 12, 1954.

Ogden, Galphin & Abell, Squire R. Ogden, Charles A. Robertson, Louisville, for appellants.

Tilford & Wetherby, Howard B. Hunt, Louisville, for appellee.

John J. Magovern, Jr., Newark, N. J., Leo T. Wolford, B. Hudson Milner, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, amicus curiae.

WADDILL, Commissioner.

This suit stems from a dispute as to the terms of a parol agreement entered into by the parties to this action in 1943. As a consequence the issue before us is whether or not appellee is entitled to recover from appellants one-half of the soliciting agent's commissions on life insurance policies, technically termed "increases" and "additions", issued in connection with certain pension plans. The Chancellor found that the agreement included the commissions in controversy and entered a decree directing appellants to account to appellee for one-half of them. This appeal follows.

A statement of the events leading to this controversy is in order. For some time, the appellants, Dennis and Brown, have been business partners and the general agents of the Mutual Benefit Life Insurance Company in the vicinity of Louisville. Prior to July, 1943, they had attempted to enter the field of selling pension trust plans supported by life insurance to Louisville business concerns employing large numbers of persons. Appellants soon learned that they needed the advice and help of an insurance specialist to assist them in formulating and selling this type of insurance.

At an insurance meeting which appellant Brown attended in Chicago in July, 1943, Brown was informed that Mutual Benefit was unable to furnish them with assistance in selling pension plan insurance. However, Brown did meet Watson, who was an insurance specialist, and as a result of a conversation between them, Watson came to Louisville and in the course of about a year, was able to formulate and sell, with appellants' assistance, eight pension plans funded by life insurance. Brown testified that Watson was an excellent salesman and was eminently qualified for this technical work.

The agreement as to how commissions would be divided between appellee and appellants was not reduced to writing. On this point Watson testified as follows:

"I told him [Brown] that I would [come], and that the arrangement would be that I was to receive one-half of all of the commissions that came from the work and the commissions that were received and that were to come from all of the cases that we solicited and closed."

During interrogation Watson was asked:

"Now during that period, beginning from the date that you made this arrangement or contract, was the question of how those commissions were to be figured, your remuneration or your share in it, what it was to be calculated on and what it was to embrace as to additions and increases?"

To which he answered:

"There was no discussion of that because the original agreement that was made with Mr. Brown in Chicago clearly stated by me that I was to re-

ceive half of the commissions which were to be paid on any cases that we secured all of the way through and he agreed to that."

Brown denied that any such statements were made, and testified:

"The agreement was that Mr. Watson would come down on the First National Bank case and that we were to share 50–50 in commissions and expenses."

Watson was paid one-half of the soliciting agent's commission on insurance policies originally sold in connection with all pension plans except one, and in this instance, by agreement, Watson accepted one-third of the commission as his share.

This dispute, as originally stated, arises as to whether or not Watson is entitled to one-half of the commissions on "additions" an "increases" as well as on original policies. Briefly, "additions" are those additional policies added to a pension plan where new employees are added to the employer's payroll subsequent to the adoption of the pension plan. "Increases" consist of additional policies increasing the amount of benefits due individual employees because they have received a raise in compensation from their employer subsequent to the adoption of the pension plan.

Apparently the first time that a specific reference was made in connection with "increases" and "additions" was in December, 1944. Watson then learned that appellants were interpreting their agreement to be that he (Watson) was entitled to commissions only on the original policies issued, and he then informed them (appellants) that he interpreted the agreement to be that he was entitled to commissions on the "additions" and "increases" as well as to his share of the commissions on original or charter member policies. Eventually this litigation ensued.

■ When a contract is silent with respect to a matter vital to the rights of the parties, a court, in construing it, is necessarily compelled to resort to a considera-tion of the surrounding circumstances and the conduct of the participants indicating their interpretation.

It is conceded that without the assistance of the appellee, or of someone with equal technical knowledge and experience, appellants would not have been able to formulate, sell and put into operation these pension plans. The effort involved in procuring the "increases" and "additions" was slight compared to the initial establishment of the plans. Appellants were entitled to deduct the clerical expenses incurred in procuring the "increases" and "additions" before they arrived at the value of the net commissions which were to be divided between appellants and appellee. The Chancellor employed additional aids in reaching his conclusion of fact. These aids included printed form contracts prepared by Mutual Benefit and signed by the parties concerning rates of commissions, and the actions of Southwestern Life Insurance Company with respect to the commissions it paid on "additions" and "increases" on policies issued to employees residing in Texas which were covered by the pension plans sold by the parties to this action.

■ Apparently the appellants were satisfied with their agreement with appellee until they realized the great amount of money appellee was receiving under their agreement. The disagreement seemingly arose thereafter when appellants asked appellee to accept one-third instead of one-half the commissions proceeding from the plans, which appellee refused to, do. A court of equity will not permit one to reap what another has sowed upon the faith of a contract such as this.

Upon a review of the record we are of the opinion that the Chancellor's finding of fact is supported by sufficient competent evidence. We perceive that the balance of the equities is on the side of appellee Watson.

■ The contention that the contract is unenforceable for the reason it violates the provisions of Subsection (7) of KRS 371.-010, our statute of frauds, is without merit.

Subsection (7) of this statute does not apply to a contract, such as the one in controversy, capable of being performed by one of the parties within one year. Pilcher v. Stadler, 276 Ky. 450, 124 S.W.2d 475.

Judgment affirmed.