**RUDD–MELIKIAN, INC., Defendant-Appellant,**

v.

**Henry T. MERRITT, doing business as Coffee Service Co., Plaintiff-Appellee.**

No. 13858.

United States Court of Appeals
Sixth Circuit.

Oct. 12, 1960.

William A. McKenzie, of Graydon, Head & Ritchey, Cincinnati, Ohio, for appellant.

Marshall P. Eldred, of Brown & Eldred, Louisville, Ky., for appellee.

Before MILLER and O'SULLIVAN,* Circuit Judges, and BOYD, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

Appellee, Henry T. Merritt, doing business as Coffee Service Co., brought this action in the United States District Court for the Western District of Kentucky to recover damages in the amount of $15,-202.98 for alleged breach of contract on the part of the appellant, Rudd-Melikian, Inc. Jurisdiction was claimed by reason of diversity of citizenship and the amount involved. Section 1332, Title 28 U.S.C.A.

For the purposes of this opinion the following facts are sufficient to present the issues. By written contract of March 6, 1953, appellant appointed appellee a distributor and operator of appellant's products, namely, coffee vending machines and "Kwik Kafe" coffee. Under the contract appellee agreed to buy 60 "Coffee Cub" machines to be delivered and accepted at stated intervals on and before June 20, 1953. The contract required that appellee make a deposit with appellant of $1,500.00, to be credited on the purchase price of the machines, and, in the event appellee breached the contract, to be retained by appellant as liquidated damages. Appellee agreed to operate or resell, subject to certain restrictions, the machines purchased "in the following described territory only: Jefferson County, State of Kentucky, Clark and Floyd in State of Indiana." The Indiana counties were directly across

---

* At the time this case was heard, Judge O'Sullivan was a District Judge, sitting by designation. He became a Circuit Judge on April 4, 1960.

the Ohio River from Louisville, Jefferson County, Kentucky. Appellee agreed to install, maintain and render efficient service for all machines sold to him by appellant, and to keep on hand at all times an adequate supply of spare parts and commodities sufficient to meet the requirements of its purchasers. Appellant agreed to sell to appellee, at published prices when the supply was available, his total requirements of Kwik Kafe coffee, a blend specially prepared for use in appellant's coffee dispensing machines. Appellee agreed that he would not sell said coffee except for use in appellant's coffee dispensing machines sold or operated by appellee.

At the time this contract was entered into there was in existence a contract of November 21, 1952, by which a similar franchise was granted by appellant to John L. Manus for Jefferson County, Kentucky, and Clark and Floyd Counties in Indiana. By contract of January 31, 1953, Manus assigned to appellee the right to operate and sell appellant's equipment in Jefferson County, Kentucky. Appellee bought thirty of appellant's machines from Manus at approximately $625.00 each. In a related agreement to the contract between appellant and appellee involved in the present case, appellant and Manus entered into a written agreement by which the contract with Manus was cancelled and appellee was assigned a credit of thirty machines on his obligation to purchase a total of sixty machines, by reason of his purchase of the thirty machines from Manus. This contract also provided that appellant would sell thirty machines to appellee to be operated in the territory previously assigned to Manus.

On April 30, 1953, appellee bought ten more machines from appellant. The contract provided for the delivery and acceptance of ten machines on May 20, 1953, and another ten machines on June 20, 1953.

By letter of May 7, 1953, appellee advised appellant that he had encountered a good deal of resistance to installing the machines where other service existed, that many installations were unsatisfactory, but that the coffee was well liked and would eventually be well received. This letter closed by stating:

"As acceptance of further machines from you would require purchase of a second truck and employment of a second route man, which we are presently unable to finance, please do not ship further machines without our request. We will notify you of our progress and when we are able to extend our operation by accepting more machines."

Appellant replied by letter of May 18 that it was holding up shipment of units produced for delivery in May, but that it was its policy to grant extensions of 30 days at a time and not to exceed two extensions during a six months contract, and that notice of a desire for extension should be given at least 20 days in advance of the proposed shipping date. The letter also stated:

"I will plan to have our Territory Manager for your area, Mr. Wm. Guthrie, call on you in the near future to assist you in any way possible.

"We trust this will meet with your approval and look forward to hearing from you in the near future."

Under date of June 16, 1953, appellee wrote appellant, stating:

"Lest there be no misunderstanding about my letter to you of May 17, 1953, we are unable to accept delivery of more machines. When we are in position to accept and operate more I will notify you immediately."

The date referred to was an incorrect reference to the letter of May 7, 1953.

Thereafter, correspondence was exchanged between the parties over a period of months, in which appellee advised appellant of additional locations which he had obtained, which he considered excellent, the necessity of converting the nickel machines into dime machines, and a gradual increase in the machine gross of the business. By letter of March 30,

1954, appellee advised of his small working capital, the necessity of converting seven machines which operated on two nickels to operation on a dime, and suggested that appellant authorize him to draw against the $1,000.00 on deposit with appellant for parts, cannisters, and conversion mechanisms "in order to improve our service and our revenues." This request was denied by letter of April 22, 1954, which stated:

"This is to inform you that we will not be able to comply with your request to credit any deposit monies you may have with this company against your purchase of anything but equipment according to the contract. This is a firm policy of our company and, as far as I know, there have been no exceptions to it."

This correspondence made no reference to a breach or cancellation of the contract.

Under date of October 13, 1954, appellant's counsel wrote appellee that "your Distributor's Sales Contract dated March 6, 1953, is considered as being in breach and the deposit moneys thereunder are declared forfeited in accordance with the terms thereof." Appellee considered the letter as only a forfeiture of his deposit and not as a termination of his franchise. He continued to operate the machines and also continued buying parts from appellant.

In 1955 appellee began to make efforts to sell the business. Appellee testified that in these efforts he was assisted by appellant's vice-president and his assistant who came from Chicago to Louisville and attempted to interest possible purchasers in taking over appellee's franchise. This continued through the summer of 1956. About October, 1956, while negotiations were being carried on with the Louisville Grocery Company, which appeared to be an interested prospect, appellee learned that appellant had given a franchise for the Louisville area to Koffee-Break, Inc. This terminated the negotiations with the Louisville Grocery Company. The present action for damages followed.

The case was tried to a jury, which returned a verdict in the amount of $7,044.98 for the appellee. This appeal followed.

In order for appellee to recover, it was necessary that appellee obtained under the contract of March 6, 1953, an exclusive franchise to operate in the Louisville area. The District Judge was of the opinion that the construction of the contract in that respect was a question of law for the Court, which view is concurred in by the parties. The District Judge instructed the jury that from the language of the contract, the nature of the contract, the restricted territory, and the actions of the parties surrounding the execution of the contract, it was intended to be and was an exclusive contract and gave to the appellee the exclusive right to enjoy the fruits of the franchise within the restricted district.

Appellant contends that this construction of the contract was erroneous and that the franchise given to the appellee was not an exclusive one. It is pointed out that nowhere in the contract is it provided that the franchise was to be an exclusive one. Appellant relies upon the parol evidence rule as prohibiting the Court from adding to the contract provisions not contained in the written instrument itself.

We do not consider this issue as one involving the parol evidence rule. If the contract provided that the franchise was a nonexclusive one, any evidence directed to the fact that the parties had orally agreed that the franchise was to be an exclusive one, would not have been competent in that it would have been an attempt to vary by oral evidence the terms of a written instrument. But the written contract contained no provision as to whether it was an exclusive franchise or a nonexclusive one, and the evidence on this question did not contradict or vary any provision of the written contract. Under the Kentucky law, which is controlling in this case, a franchise contract can be an exclusive one even though there is no express provision in the written contract

to that effect. The White Company v. W. P. Farley & Co., 219 Ky. 66, 292 S.W. 472, 474, 52 A.L.R. 541. In that case the Kentucky Court of Appeals said, "The contract appears to have been prepared by appellant, and does not specifically provide that it is an exclusive contract. Its provisions as a whole, however, are inconsistent with any other view." In construing the contract in that case as an exclusive one, the Court referred to the limited area in which the appellee, who was the sales agent of the appellant, was authorized to operate, to the fact that the appellee was required not to handle other commercial motor cars and parts therefor except those manufactured by appellant, and to the action of the parties in considering the contract as an exclusive agency during its term.

A contract is to be construed as a whole so as to ascertain and give effect to the true intent of the parties, and the circumstances under which the contract was executed and the conduct of the parties thereafter can be considered by the Court in determining what their intention was, without it being a violation of the parol evidence rule. Holliday v. Sphar, 262 Ky. 45, 48–49, 89 S.W.2d 327; Lincoln National Life Insurance Co. v. Means, 264 Ky. 566, 575, 95 S.W.2d 264. In the determination of the meaning of an indefinite or ambiguous contract, the interpretation placed upon the contract by the parties themselves is given great weight by the Court, not to vary the terms of the written instrument, but to make definite that which the wording of the contract has left indefinite. Jones v. Linkes, Ky., 267 S.W.2d 936; Billips v. Hughes, Ky., 259 S.W.2d 6, 7; Easter v. Johnson, 217 Ky. 639, 641, 290 S.W. 505. As above pointed out, the contract in the present case is silent as to whether the franchise granted was an exclusive one or a nonexclusive one. In Dennis v. Watson, Ky., 264 S.W.2d 858, 860, the Court applied this rule, stating, "When a contract is silent with respect to a matter vital to the rights of the parties, a court, in construing it, is necessarily

compelled to resort to a consideration of the surrounding circumstances and the conduct of the participants indicating their interpretation." See also: Morris Shoe Company v. Coleman, 187 Ky. 837, 840, 221 S.W. 242, in which case the written contract contained no express provision with respect to whether the contract of employment was for the period of a year or terminable at the will of either party.

Appellant has referred us to no Kentucky case in conflict with the ruling in The White Company v. W. P. Farley & Co., supra, and even if we might not be in agreement with the ruling, we are required to accept it for the purposes of the present case. Milan v. Kausch, 6 Cir., 194 F.2d 263, 266; Doggrell v. Southern Box Co., 6 Cir., 208 F.2d 310.

We recognize that what was said in The White Company v. W. P. Farley & Co., supra, was not a ruling on an issue which was in dispute between the parties, but this does not change the ruling into an unnecessary statement by the Court which should be treated as dictum. In order for Farley to recover in that case, it was necessary that his contract be construed as an exclusive franchise. Disputed or undisputed, it was a necessary ruling that had a controlling effect upon the decision. The fact that counsel did not disagree with a proposed ruling by the Court against him did not change the ruling into an unnecessary statement by the Court to be treated as dictum. Union Pacific R. Co. v. Mason City, etc., Co., 199 U.S. 160, 166, 26 S.Ct. 19, 50 L.Ed. 134; Fouts v. Maryland Casualty Co., 4 Cir., 30 F.2d 357, 359, certiorari denied 279 U.S. 852, 49 S.Ct. 348, 73 L.Ed. 995.

In The White Company v. W. P. Farley & Co., supra, the Court in making its ruling stressed the fact that the contract definitely fixed the area in which the distributor was authorized to operate and that it was considered by the parties as an exclusive agency during its term. In the present case, the area of operation was also expressly limited by the contract, and appellant by its dealings with

appellee and Manus, appellee's predecessor in the Louisville area, at the time appellee took over the Louisville area indicated that it intended to have but one distributor in the Louisville area. Appellee testified with respect to the negotiations about the franchise as follows:

"I made it perfectly clear at that time that if we went that far, we would have to have an exclusive franchise in this area, and he made it perfectly clear to us that if we did take the sixty machines we would have the exclusive franchise in these three areas.

"He made the statement that we would have no competition, and furthermore if we did it would be the competition that we, ourselves, let into this area."

Appellant's actions over a period of a number of months in recognizing appellee's franchise in the Louisville area, even after default in the purchase of the entire sixty machines, and in attempting to arrange a *transfer* of the franchise to another party strongly indicated that such was the understanding of the parties. As pointed out before, this testimony did not contradict or attempt to change any provision in the written contract. It showed the understanding between the parties with respect to something, about which the contract was silent. Dennis v. Watson, Ky., 264 S.W.2d 858, supra; Bullock v. Young, 252 Ky. 640, 650–652, 67 S.W.2d 941; Hamilton Carhartt Overall Co. v. Short, 303 Ky. 423, 426, 197 S.W.2d 792.

On October 2, 1956, appellant gave a franchise for the Louisville area to Koffee-Break, Inc., which resulted in the present litigation. That contract, like the one in issue in the present case and also like the earlier contract to Manus, did not state whether it was an exclusive or nonexclusive franchise. In view of the ruling in The White Company v. W. P. Farley & Co., supra, we cannot say that because there was no express provision that the franchise was exclusive, we must consider it nonexclusive. In any event,

there is testimony that about April, 1957, it was superseded by a contract which gave the licensee an exclusive franchise for the Louisville area. This contract was not introduced in evidence, and the exact wording of it is not before us. There was testimony that an exclusive franchise was normal in the food vending business. There was also testimony that it was not the normal practice for appellant to grant an exclusive franchise.

Whether we agree or disagree with the District Court's construction of the contract, we are of the opinion that under the evidence above referred to and the authority of The White Company v. W. P. Farley & Co., supra, it was a permissible one upon a question of local law.

 It may be that, notwithstanding the ruling in The White Company v. W. P. Farley & Co., supra, the Kentucky law is uncertain on the question of whether the contract in question can properly be construed as granting an exclusive franchise. But the rule appears well settled that in diversity cases, where the local law is uncertain under state court rulings, if a federal district judge has reached a permissible conclusion upon a question of local law, the Court of Appeals should not reverse, even though it may think the law should be otherwise. As said in a number of the cases, the Court of Appeals should accept the considered view of the District Judge. National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741; John Hancock Mut. Life Ins. Co. of Boston, Mass. v. Munn, 8 Cir., 188 F.2d 1, 4; Elizabeth Hospital, Inc. v. Richardson, 8 Cir., 269 F.2d 167, 170; Bower v. Bower, 9 Cir., 255 F.2d 618, 619; Hamblin v. Mountain States Tel. & Tel. Co., 10 Cir., 271 F.2d 562, note 1, page 564. See: Federal Digest, Courts, ☞ 406.2. See also: MacGregor v. State Mutual Life Assur. Co., 315 U.S. 280, 62 S.Ct. 607, 86 L.Ed. 846; Helvering v. Stuart, 317 U.S. 154, 163, 63 S.Ct. 140, 87 L.Ed. 154. We recognized the rule in the following two cases. In re Glassman, 6 Cir., 262 F.2d 857, 859; Boyd v. Gray, 6 Cir., 261 F.2d 914, 915.

■ After instructing the jury to consider the contract as granting an exclusive franchise to the appellee, the District Judge also told the jury that there was no semblance or pretense that the appellee fulfilled his obligation to take the sixty machines covered by the contract, which was a breach of the contract on his part giving the appellant the right to terminate the contract at that time, and that unless appellant waived the breach, appellee could not recover. He left to the jury the question of whether there was a waiver of the breach and an election by appellant to proceed with the contract despite the breach. We are of the opinion that the evidence was sufficient to take this issue to the jury. Chicago Sugar Co. v. American Sugar Refining Co., 7 Cir., 176 F.2d 1, 7, certiorari denied 338 U.S. 948, 70 S.Ct. 486, 94 L. Ed. 584; O'Bryan v. Mengel Company, 224 Ky. 284, 6 S.W.2d 249; Kentucky Natural Gas Corp. v. Indiana Gas & Chemical Corp., 7 Cir., 129 F.2d 17, 143 A.L.R. 484, certiorari denied 317 U.S. 678, 63 S.Ct. 161, 87 L.Ed. 544; Pasquel v. Owen, 8 Cir., 186 F.2d 263, 270.

No exceptions were taken by appellant to the instructions on the question of waiver, and they are not subject to review at this time. Rule 51, Rules of Civil Procedure, 28 U.S.C.A.

The judgment is affirmed.

O'SULLIVAN, Circuit Judge (dissenting).

I cannot agree that appellee Merritt had an exclusive distributorship under his contract with appellant. Such an exclusive contract or franchise was essential to appellee's recovery. The trial judge ruled as a matter of law that the contract in question did provide plaintiff with an exclusive franchise and so charged the jury. Nowhere in the contract is it provided that Merritt's distributorship was to be an exclusive one. The needed attribute of exclusiveness, if it is to be found, must, therefore, be implied from the language employed in the contract or from the conduct of the parties.

In telling the jury that appellee had an exclusive contract, the trial judge said that he determined that it was such, "from the language of this contract, the nature of the contract, the restricted territory, *and the actions of the parties surrounding the execution of that contract.*"

After the usual preamble, describing the parties as "seller" and "distributor" respectively, the contract before us provides:

"SELLER hereby appoints DISTRIBUTOR and DISTRIBUTOR hereby accepts the appointment as a DISTRIBUTOR and operator of the Seller's products, viz., RUDD-MELIKIAN, INC., vending machines and 'KWIK KAFE' coffee, upon and subject to the terms and conditions hereinafter contained, * * *."

A territory was assigned to Merritt, as distributor, as follows:

"TERRITORY ASSIGNED DISTRIBUTOR: Distributor agrees to operate or resell, subject to the restrictions noted below, the machines purchased under this agreement or any other Rudd-Melikian machines it may acquire in the following described territory only: Jefferson County, State of Kentucky, Clark and Floyd in the State of Indiana. * * *"

Other than claiming that because the territory assigned to him was limited to the counties mentioned, appellee points to no provision of the contract containing an expression or implication of an intention that his distributorship was to be exclusive. He concedes that the contract is clear and unambiguous. I am not persuaded that because appellee's right to deal in appellant's products is limited to a certain territory, that it follows that he has such right exclusively. The only place where the contract before us refers to exclusiveness or non-exclusiveness is in the seller's grant of right to use the trademark "Kwik Kafe." Here, the seller, Rudd-Melikian, was

careful to state that the grant was to the "non-exclusive" use of the trademark.

Having in mind that the appellee, Merritt, is asking that his contract be endowed, by judicial construction, with a quality that its language does not express, I think it proper to inquire whether what he has accomplished by such construction could have been within the intentions of the contracting parties. By his contract, he agreed to buy 60 machines. He refused to complete this agreed purchase. His representation of the appellant was unsatisfactory to him and to the appellant. He abandoned the use of the blend of coffee, the sale of which was being promoted by the appellant, in favor of another brand. (His contract did not require him to use appellant's coffee exclusively.) He sold some of the machines he did purchase and at the time of the trial, he owned 16 of the original 40 which he had purchased. His operation was not successful and he had been dunned for unpaid accounts for parts and coffee he had purchased from, and through, the appellant. The contract had no fixed term, but provided that it was to remain in force "so long as distributor fulfills all of the obligations contained in this agreement." He was able to overcome his own breach of the contract in refusing to buy the number of machines he had contracted for by his claim that appellant had irrevocably waived his breach of contract. Notwithstanding the serious failure of the enterprise in his hands, he employs his claim of exclusiveness to forever forbid the appellant, unless it pays damages for breach of contract, from doing business in the Louisville territory.

Both parties concede that the construction of the contract was a matter of law to be determined by the trial judge. Laurel Cliffs Mfg. & Distributing Co. v. Prichard, 255 Ky. 762, 75 S.W.2d 491; Johnson v. Edwards, 230 Ky. 485, 20 S.W.2d 76; Harlan Fuel Co. v. Wiggington, 203 Ky. 546, 262 S.W. 957.

Appellee correctly concedes that the contract is not ambiguous.

"It is our position that the contract itself, by the plain meaning of the language contained therein, granted to appellee an exclusive franchise to operate and sell coffee vending machines of appellant in the territory described in said contract."

The appellee, however, insists that the trial court's interpretation of the contract was properly aided by consideration of the background of the contract and by statements made in the negotiations which preceded its execution. There was received in evidence Merritt's testimony that in preliminary conversations with representatives of the defendant company it was stated to him that if he took a distributorship, he would have a right to control his own competition. He said that he told defendant's representatives that if he went so far as to buy sixty machines, he would have to have an exclusive franchise in the area in which he was to operate. The conversations in which the subject of an exclusive contract was discussed were part of the negotiations which preceded execution of the contract. Appellee insists that the contract is clear and unambiguous, but likewise insists that it was proper for the trial court to take into consideration these preliminary negotiations in arriving at the intention of the parties. Appellee says:

"It is appellee's contention that when consideration is given only to the language of the contract, it is clear that appellee was granted by the contract an exclusive franchise within the assigned territory. It is not necessary, in order to reach this interpretation, to consider the circumstances surrounding the execution of the contract. When such circumstances are considered, however, as they properly were, rather than contradicting any part of the written contract, they demonstrate that it was the intention of the parties that appellee be given an exclusive franchise within the assigned territory."

We have quoted hereinabove those parts of the contract in which, if exclusiveness was intended, it would have been expressed.

I am unable to find in the language of this contract an expression or implication of an intention that appellee's distributorship was to be exclusive. Appellee, conceding that the contract is clear and unambiguous, fails to point out what of its language expresses or implies an intention to create an exclusive distributorship. Appellee relies upon two cases for the proposition that exclusiveness should be construed into his contract, though not expressed. White Co. v. W. P. Farley & Co., 1927, 219 Ky. 66, 292 S.W. 472, and Mantell v. International Plastic Harmonica Corp., 1947, 141 N.J.Eq. 379, 55 A.2d 250, 173 A.L.R. 1185. Neither of these cases is dispositive of the question before us. In the White Co. case, the Kentucky Court of Appeals used some language which, read apart from its own facts and contested issues, might appear to support Merritt's contention here. However, a fair reading of the decision will disclose its factual dissimilarity to the case at bar; and, clearly eliminating it as controlling here, is the fact that the question of whether the contract there being considered created an exclusive agency, was not a contested issue in the case. The Court said [219 Ky. 66, 292 S.W. 474]:

"Clearly under these provisions the contract was intended to be and was considered by the parties, an exclusive agency during its term, and there is no contention in appellant's briefs that it was otherwise; it being virtually conceded that appellant during the life of the contract had no right to invade that territory and sell its trucks so as to deprive appellee of his contract commission."

I am aware that if the case of White Co. v. W. P. Farley & Co. does establish the law of Kentucky to be such that the contract before us must be construed as an exclusive one, my disagreement with that decision is of no importance. Because my brothers rely upon it as a controlling decision, I have obtained from the Court of Appeals of Kentucky the records and briefs of that case. Examination of these confirms the fact that the exclusiveness or non-exclusiveness of the contract there involved was not put in issue by the pleadings or proofs. The defendant in the case conceded that so long as the contract there in question was in force, the defendant company could not sell its motor vehicles within the territory covered. It was wholly unnecessary for the Kentucky Court of Appeals to construe such contract. The issue was not construction of the contract, but whether or not the White Company had illegally cancelled the contract and, thereafter, made a sale of one of its motor vehicles in the territory assigned to Farley.

I, likewise, do not consider the case of Mantell v. International Plastic Harmonica Corp., 141 N.J.Eq. 379, 55 A.2d 250, 173 A.L.R. 1185, controlling. Careful reading of that decision, as in the White Co. case, will demonstrate that the question of whether the contract involved created an exclusive agency, was not a disputed issue. The facts of that case also distinguish it from the case at bar. The defendant, International Plastic Harmonica Corp., had, by contract, appointed Mantell as its "general distributor" within a defined territory. By the contract, Mantell, the distributor, was required to take, during a fixed period, defendant manufacturer's entire production not exceeding a maximum amount per month. Other differentiating facts, not necessary to here detail, were involved. Although the New Jersey court discussed the contract as intending to create an exclusive agency, its following reference to admissions of defendant's pleadings shows that there was no issue as to exclusiveness of the agency in question (at page 256 of 55 A.2d, at page 1194 A.L.R. report):

"In its answer * * * the defendant corporation admitted, and the admission was also supported by the proofs, that * * * it mailed to complainants 'all prospective pur-

chase inquiries' received by it from persons 'in complainant's territory to whom defendant was not entitled under said contract to make sales.' "

Being of the opinion that the admittedly clear and unambiguous contract before us did not, by its own language, create an exclusive distributorship in Merritt, I consider whether, as contended by him, it should be construed as such because of the conduct of the parties, and the negotiations had prior to its execution.

Appellee, Merritt, cites the cases of Holliday v. Sphar, 262 Ky. 45, 89 S.W.2d 327; Lincoln National Life Insurance Company v. Means, 264 Ky. 566, 95 S.W. 2d 264. Lincoln National Life Insurance Co. v. Means, was a case where parol evidence was considered to aid in determining the probable intent of an ambiguous contract. The case of Holliday v. Sphar, recognizing the same rule, held that in the contract there involved there was no ambiguity and parol evidence was, accordingly, not admissible. Kentucky adheres to the parol evidence rule. Bennett v. Consolidated Realty Co., 226 Ky. 747, 11 S.W.2d 910; Helton v. Asher, 135 Ky. 751, 123 S.W. 285; Conrad v. Smith, 203 Ky. 171, 261 S.W. 1103; and National Bank of Kentucky at Louisville v. Minary, 221 Ky. 798, 299 S.W. 985.

Review of the admitted evidence of the background to and "the circumstances surrounding the execution of the agreement" (appellee's brief), is persuasive of the wisdom of the rule which forbids parties, under the guise of construction, from using parol evidence to add a term unexpressed and wholly missing from a final, written contractual document. Four contracts made between Rudd-Melikian and distributors for the Louisville area were put in evidence. These included contracts of November 21, 1952, March 6, 1953, May 18, 1954, and October 2, 1956, appointing Manus, Merritt, Lutes and Koffee-Break, Inc., respectively, as such distributors. All were in substantially the same language and none provided for an exclusive distributorship.

It is urged in support of Merritt's claim that the contract was exclusive, that the defendant, after the plaintiff's default, recognized him as a distributor and attempted to arrange a transfer of the franchise to another party. Certainly a construction of exclusiveness should not result from efforts of the defendant to help out plaintiff in trying to recapture some of his investment after failure to make a successful operation of his business venture. The fact is, that during the time that plaintiff Merritt was continuing as a distributor for defendant, defendant, on May 18, 1954, appointed another distributor for the same territory in which Merritt was operating. This distributor's contract was of the same character as that given to Merritt.

When the distributor, whose appointment is relied upon here as a breach of the contract, was appointed on October 2, 1956, that distributor was given the same non-exclusive type of contract as was the plaintiff. It was not until 1957, after this new distributor had been operating for a substantial period of time, that he was given one of the exclusive type contracts which, the evidence shows, was used by defendant in some places.

The evidence further shows that at the time the contract in suit was made with Merritt, appellant, Rudd-Melikian, had outstanding in the United States some 197 distributor contracts, only four of which provided for exclusive representation of Rudd-Melikian. Where agreed upon, an exclusive distributorship was provided for in a special form of rider in use for that purpose. Under such rider, an exclusive distributorship was allowed for a limited period of time with an option to extend such exclusive distributorship for an additional period provided the distributor agreed to purchase a monthly quota of machines. Such quota was fixed by Rudd-Melikian. No such rider was attached to the contract between appellant and appellee.

When Merritt signed the contract sued upon, he knew he was not getting an exclusive distributorship. When he took the Louisville territory from Manus on January 31, 1953, notwithstanding that the Manus contract with Rudd-Melikian

said nothing about an exclusive distributorship, Merritt, a practicing lawyer drew a contract whereby Manus agreed to give Merritt an exclusive distributorship. The contract carefully provided:

"Whereas Merritt desires to exclusively operate, sell and lease said products and to use said trademark in Jefferson County, Kentucky, * * *. Manus hereby grants to Merritt sole and exclusive right, privilege and franchise to operate, sell, vend and lease all the said Rudd-Melikian, Inc., products in Jefferson County, Kentucky."

There is no evidence that any representative of defendant had anything to do with the negotiations between Merritt and Manus or had any knowledge of the above language of the contract whereby Merritt sought to obtain an exclusive distributorship from Manus. The cancellation of the Manus agreement by defendant did not occur until after a contract had been negotiated directly between defendant and plaintiff Merritt some time in March, 1953.

In testifying concerning his negotiations for a direct contract with Rudd-Melikian, he told of his desire to get an exclusive contract: "I made it perfectly clear at that time that if we went that far, we would have to have an exclusive franchise in this area, and he made it perfectly clear to us that if we did take the sixty machines we would have the exclusive franchise in these three areas."

He told of the representative of Rudd-Melikian exhibiting to him the printed form of contract being offered to him. He stated: "I had pointed out that the contract said nothing about being exclusive."

On examination by his own counsel, he was asked to sum up the items agreed to verbally, "which did not appear or were not touched by the written contract." He answered: "First and foremost was the fact that we would have an exclusive distributorship contract here." This was a clear statement that Merritt knew that the contract sued upon did not give him an exclusive distributorship.

Merritt brought suit upon the written contract and upon his claim that it provided him with an exclusive distributorship. He is not claiming fraud, nor is he seeking to reform a contract that he claims was entered into by mistake. Wigmore, after reviewing the history of the parol evidence rule and emphasizing that it is not merely a rule of evidence, but one of substantive law, states:

"When a jural act is embodied in a single memorial, all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their act." 9 Wigmore, Evidence, § 2425 (3rd Ed., 1940) p. 76.

The rule is expressed in C.J.S. as follows:

" * * * with certain exceptions * * * such as fraud, accident, mistake, or ambiguity, parol or extrinsic evidence is not admissible to vary, *add to* * * * the terms or provisions of the written instrument, by showing the intentions of the parties, or their real agreement with reference to the subject matter, to have been different from what is expressed in the writing, for where the parties have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of their engagement, all previous or contemporaneous negotiations and agreements * * * are presumed or considered to have been merged in, or superseded by, the written contract, *and the whole engagement* of the parties and the *extent* of their undertaking is conclusively presumed to have been reduced to writing, and * * * the writing being regarded as the only evidence of the agreement." 32 C.J.S. Evidence § 901, pp. 816–822 (1942).

We are not dealing here with the necessity of seeking help to find out some

usage or custom giving to words a local or peculiar meaning. Williston, in discussing the rule that the surrounding circumstances may be shown in arriving at the proper construction of a contract, concludes the subject as follows:

"It must be kept in mind, however, that the only purpose for which such evidence is ever admissible in an action on the contract is to interpret the writing. So far as the evidence tends to show not the meaning of the writing *but an intention wholly unexpressed in the writing,* it is irrelevant." Williston, Contracts, § 629 (Rev. Ed. 1936).

Such is the law of Kentucky. Falls City Machinery & Wrecking Co. v. Walter, 1928, 224 Ky. 726, 6 S.W.2d 1053; Northeast Lumber Company v. Harris, 1927, 220 Ky. 454, 295 S.W. 455. This court has agreed, Cincinnati Underwriters Agency Co. v. Thomas J. Emery Memorial, 6 Cir., 1937, 88 F.2d 506.

Whether the parol evidence rule is one of evidence or substantive law, its purpose is to prevent what appellee here seeks to accomplish. Whether the contract under negotiation between Merritt and Rudd-Melikian was to provide, or not provide, an exclusive distributorship was conspicuously and critically a subject of discussion in the negotiations carried on between the contracting parties. When the terms discussed, and finally agreed upon, were integrated in a formal, admittedly unambiguous, written document, this vitally desired provision was missing. The party asserting that we should read this missing provision into his contract, was a practicing lawyer who, in a previous document prepared by him, carefully and clearly spelled out the term noticeably absent from the contract sued upon. I do not think we should now supply such missing provision.

The following cases cited in a relevant annotation, found at 126 A.L.R. 1233, support the above conclusion: King Powder Co. v. Dillon, 1908, 42 Colo. 316, 96 P. 439; Dahath Electric Co. v. Sub-urban Electric Development Co., 1938, 332 Pa. 129, 2 A.2d 765; William Deering & Co. v. Beatty, 1898, 107 Iowa 701, 77 N.W. 325; Aultman & Taylor Co. v. Joplin, 1886, 8 Ky.Law Rep. 62; and Indiana Road Mach. Co. v. Lebanon Carriage & Implement Co., 1904, 78 S.W. 861, 25 Ky.Law Rep. 1763.

The similarity of the case of Dahath Electric Co. v. Suburban Electric Development Co., supra, to the case at bar warrants a short discussion of its facts and the conclusion of the Pennsylvania Supreme Court. There it was contended that a contract not expressly providing for an exclusive distributorship should be construed to intend such. As in this case, the distributor was limited in the territory in which he was to operate. He was required to service the appliances sold by him as distributor. He was referred to in the contract as, "the dealer" and in certain instances the territory allotted to him was described as, "his territory." The distributor sought to show that he had been promised an exclusive agency and that that was the understanding of the negotiations which preceded the making of the contract. The Pennsylvania court emphasized that the contract had been deliberately entered into by businessmen, and in holding that the preliminary conversations could not supply the missing term of exclusiveness, and that the contract could not be construed as intending such the court said:

"* * * parties to this contract, competent businessmen, had they contemplated an exclusive agency, would we think have so provided in the written agreement. It could not be properly or justly concluded that they left this most important feature of the agreement out to be read into it by inference."

I would hold that the appellant's granting of another distributorship in 1956 was not a breach of any contract with appellee and that appellant's motion for a directed verdict should have been granted.