## Kentucky & West Virginia Power Company v. Gilliam.

## Same v. Johnson.

## Same v. Price.

## Same v. Elmon Syck.

## Same v. Hiram Syck.

## Same v. Scott.

(Decided October 30, 1925.)

### Appeals from Pike Circuit Court.

1. Judgment—Error to Cancel Contract to which Both Parties Sought Construction and Specific Performance.—Where both parties to suit sought construction and specific performance of contract, and neither attacked its validity nor sought its cancellation, court erred in cancelling it.

2. Contracts—Evidence of Fraud Must be Clear and Convincing to Cancel Contract.—To cancel contract for fraud, evidence thereof must be clear and convincing.

3. Evidence—Contracts, Granting Right of Way for Power Transmission Lines, Held so Plain and Unambiguous as to Preclude Evidence of Fraudulent Representations that Agreement to Pay Specific Sums "per Pole" Meant per Perch in Lineal Measurement.— Contracts, granting right of way for erection of "poles," wires, etc., for electric power transmission line,. authorizing power company to erect and maintain "poles," towers, etc., on premises, and providing for payment of specified sums "per pole," held so plain and unambiguous as to preclude evidence of fraudulent representations that "pole," as used in provision for compensation, meant a lineal perch.

4. Contracts—Meaning of Term Parties could have Used in Any of Several Senses Determined from Contract Itself.—Meaning of term which parties could have used in any of several permissible senses, is determinable from contract itself, unless there is reasonable doubt from context as to sense in which they used it.

HARMON, FRANCIS & HOBSON for appellant.

PICKLESIMER & STEELE for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLARKE— Reversing in each case.

Appellees, who were plaintiffs below, are landowners in Pike county. They executed separate written contracts to the appellant agreeing to convey to it a right of way through their lands for an electric power transmission line. These contracts recite the payment of one dollar to each of the appellees and obligate appellant to pay to them when the right of way is definitely located sums ranging from five to twenty dollars "per pole." Thereafter appellant definitely located and was engaged in constructing its transmission line through the lands of appellees when they instituted these actions against it.

Each of the appellees, other than John W. Price, sought a cancellation of the contract for alleged fraud in its procurement, while he sought to recover thereon the agreed price of fifteen dollars per pole, averring that the word "pole" as used in the contract meant a lineal pole or perch rather than a pole upon which wires were strung. In addition Price sought damages for an alleged injury to his crops, land, etc.

In each case appellant controverted the allegations of the petition and by answer and counterclaim sought specific performance and tendered the amount due under the contract upon the construction that the stipulated

price "per pole" referred to the poles supporting its transmission line and not to lineal poles or perches traversed by the line.

The issues were completed by replies, and in each case the chancellor dismissed the counterclaim and cancelled the contract and the company appealed. By agreement of parties the appeals are heard together; the questions are the same in all cases except Price's. It is clear the court erred in cancelling his contract since in that case both parties sought a construction and specific performance, and neither party attacked its validity or sought its cancellation. In the other five cases the charge of fraud is not sustained by the character of evidence required to cancel a contract, which must be clear and convincing. Virginia Iron, Coal & Coke Company v. Crigger, 179 Ky. 748, 201 S. W. 298. Hence the chancellor also erred in cancelling those contracts.

It is conceded by counsel for appellees in brief that "the appellees are not trying to disturb the appellant in the use of the property but only want a just compensation for the rights acquired by the appellant and pay for the damages to their property." Stated otherwise and as the evidence fully demonstrates, appellees are dissatisfied with the contracts they executed and under which appellant entered and took possession of the right of way, only because these contracts do not provide for what they now conceive to be "a just compensation for the rights acquired by the appellant" thereunder.

There is no evidence even remotely indicating fraud unless it be that of appellees testifying for themselves and each other that the agent of the appellant, C. B. Thompson, procured their signatures to the contracts by representing that the price he agreed to pay them per pole was a reasonable price and as much as he was authorized to pay; that he represented to some of appellees that the word "pole" as used in the contracts meant a perch in lineal measurement and failed to explain its meaning to others and thus either caused or allowed them to believe such was its meaning. All of this is denied by Thompson, and the latter proposition is contradicted by the contracts themselves, which are too plain and unambiguous to permit the introduction of evidence to vary their terms or explain their meaning. The word "pole" is used three times in the contracts; twice with reference to the purpose for which the right of way was granted

and once with reference to the agreed upon compensation for the right of way. That it was used for the same purpose and with the same meaning in each instance is too clear to admit of doubt, as is also the fact that in the first two instances it means a pole erected in the ground to be used as an instrument to support transmission wires.

The right of way is granted "for the purpose of erecting, operating and maintaining thereon *poles,* wires and fixtures to be used for transmission line in transmitting electric or other power." The appellant, the power company, its agents or employes, are empowered to go upon the land and locate the line and after location to "erect and maintain on said premises *poles,* towers, cross-arms, etc." It is then provided that the power company shall pay to the grantor a specified sum "per pole."

It is true of course that the word "pole," like many others, taken by itself has more than one meaning and the parties could have used it in their contract in any of its permissible senses, but this is determinable from the contract itself unless from the context there is reasonable doubt as to the sense in which the parties used it.

The rule is thus expressed in 6 R. C. L. 844:

"Judicial construction of a contract does not reach a point where the meaning of some significant word can be said to be in doubt, and it is permissible to assign thereto one of two meanings, either of which is within the reasonable scope thereof, upon merely arriving at a conclusion that such word may, as an abstract proposition, be given either of two meanings. A word in a contract, taken by itself, often admits of two meanings, when from the whole contract to be construed there is no reasonable doubt as to the sense in which the parties used it. In that situation, the particular sense they ascribed to the word when the contract was made must be adopted if it is within the reasonable scope thereof."

We are, therefore, clearly of the opinion that there was no such proof of fraud as warranted a cancellation of the contracts; that they are too plain and unambiguous to admit of oral evidence to explain or vary their meaning and that the court should have denied cancellation and enforced the contracts as above construed.

The judgments are therefore reversed, with directions to enter a judgment for appellant on its counterclaims in each case, and to dismiss the petitions in all cases, except so much of Price's as seeks damages for injuries to his crops and lands not authorized by the contract, and for trial of that issue.