M. J. ALLGIER, d/b/a Berry Soap and Chemical Company, Appellant,

v.

Leonard BRUSH and Woodenware Company and Walter T. Adams, Appellees.

Court of Appeals of Kentucky.

May 13, 1977.

Henry J. Burt, Jr., Louisville, for appellant.

Adrian F. O'Bryan, Stanley R. Badesch, Louisville, for appellees.

Before HOWARD, LESTER and WILHOIT, JJ.

LESTER, Judge.

This appeal arises out of a suit by appellant for breach of contract to purchase a business, in which the circuit court determined that the appellee, Leonard Brush and Woodenware Company, through its president, Walter T. Adams, had completed its acquisition of Berry Soap and Chemical Company from appellant, M. J. Allgier, without any further obligation. For the sake of convenience, we shall refer to the business entities as Berry Soap and Leonard Brush.

In early 1968, appellant, Allgier, learned that the Department of Highways, Commonwealth of Kentucky, was acquiring rights of way for the interstate system which would involve his premises which factor, together with his age and desire to retire, caused him to search for a purchaser of his business only and he eventually found Leonard Brush. Allgier represented Berry Soap to be a profitable venture earning net profits of between $15,000.00 and $20,000.00 in previous years while for the immediate past twelve month period, the net had been but $10,000.00 because of a drop in the price of grease. Without any further investigation, Adams accepted Allgier's representations as to the condition of the company and proceeded to personally draft a contract to purchase which will be designated as the May, 1968, contract. Leonard Brush would not pay appellant a sum certain for his business but rather elected to continue marketing Berry Soap products and to pay the seller 50% of the gross profit for a period of seven years plus an annual $1,500.00 consultant's fee and $600.00 per year as travel, entertainment and auto expenses. There is nothing to indicate if Allgier was to perform any services for Leonard Brush such as servicing his former accounts nor what his duties might have been as a consultant. There were other provisions of the contract which are of little import to this appeal.

In June of 1968, Allgier commenced moving Berry Soap into a new Leonard Brush building and during the course of the operation, Adams discovered a paper reflecting that Berry Soap had sustained a loss of $1,963.13 during the first four months of 1968 contrary to appellant's statement that his business had been "very profitable." It

also developed that Berry Soap had sustained a net loss during the 1967 business year. Adams notified Allgier by telegram dated June 17, 1968, that the contract was cancelled because of "fraud, misrepresentation and deceitful actions." The court below determined that Allgier apparently acquiesced in the rescission because he testified that the parties worked without a written contract for about a month coupled with the fact that appellant consulted his lawyer about drafting a new similar document. On the other hand, Allgier argues to this Court that he did not so acquiesce because he contended with Adams that they had a contract and that Leonard Brush was going to live up to it.

Between June 19, 1968 and July 2, 1968, Allgier executed several documents which appellees set out in the exhibit section of their brief and numbered five, six and seven which indicate that the parties continued to do business.

The plaintiff below based his original complaint upon an alleged agreement of July 18, 1968, whereby Leonard Brush would purchase Berry Soap for the sum of $30,000.00 provided that within seven years that sum could be paid out of 50% of the gross profits of Berry products and Leonard Brush products sold to Allgier's customers. At the conclusion of the seven year period, if the $30,000.00 had not been realized under the gross profits formula, then Allgier would cancel any balance thereof in consideration of the payment of one dollar. In addition, appellant was to continue as an employee-consultant and out of his 50% of the gross profits, he was to receive $125.00 per month as a consultant's fee and $50.00 for each similar time period for entertainment, travel and automobile expenses. As in the former contract, there is nothing specific contained in the second document to indicate what particular duties Allgier was to perform, if any. There are other provisions of the July agreement but we do not consider it necessary to this decision to recite them herein.

The second agreement was professionally drafted with provision at the end for signatures but it never was formally executed by the parties. Attached to the complaint as an exhibit was a document bearing the following language:

The foregoing agreement is acceptable to the Leonard Brush Company provided no change is made whatever in wording or punctuation that would Alter agreement in anyway whatever.

Dated 7–18–68

(s) W. Adams

Agreement accepted as it is written on 7–18–68.

By (s) M. J. Allgier

On September 13, 1968, appellant signed the following paper which we will hereafter refer to as the partial release:

(LETTERHEAD OF LEONARD BRUSH & WOODENWARE CO.)

September 13, 1968

In accepting this check # 8401 in the amount of $979.76, I hereby release the Leonard Brush Company of all obligations to me or my estate.

Leonard's obligation to me in the future will be ½ of the Gross Profits after 9–1–68 as described in the original contract but ½ of Gross Profit after 9–1–68 will be on sales to Berry Soap customers only.

Leonard further agrees to notify me of any order to Berry Soap customers that it does not intend to fill.

(s) M. J. Allgier

From June, 1968, until June 2, 1972, the parties worked under what they believed to be a binding contract but on the last mentioned date, appellees notified appellant that the agreement was cancelled and Allgier commenced this litigation against Leonard Brush and Adams, individually.

■ With relation to the contract of May, 1968, we are of the opinion that where a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud or material representation, the transaction is voidable as against the latter. *Restatement of Contracts* § 476 (1932); 17 *Am.Jur.2d* Contracts § 151; and

*Central States Fire Insurance Company of Wichita, Kansas v. Holland*, 219 Ky. 727, 294 S.W. 489 (1927). However, the party must have been injured by the fraud or misrepresentation. *Kentucky & West Virginia Power Co., v. Gilliam*, 210 Ky. 820, 276 S.W. 983 (1925). There is nothing in the record to indicate that appellees were damaged or injured in any manner by Allgier's misrepresentations especially when we recall that not even two full months expired between the date of the contract and the purported rescission.

■ When the record is considered as a whole, there is established a definite pattern with little deviation from the basics of the transaction. There is a sale of a business for an indefinite purchase price having a limitation of $30,000.00. The method of payment is 50% of the gross profits from the merchandising of specified products which did vary in July, 1968, with the addition of 50% of the gross profit of Leonard Brush items sold to appellant's customers. During the entire period involved, Allgier was to receive $1,500.00 per year as a consultant's fee and $600.00 annually for related expenses. The formula for determining the 50% gross profit was altered slightly between the first contract, the second agreement and the termination of the association but nevertheless, the basic premise of 50% remained. At no point was the sale of Berry Soap to appellees ever set aside or any assets thereof returned to Allgier. Leonard Brush manifested an intention to do so but it, in fact, never did and, if anything, forged ahead with the entire transaction. Appellees might have intended a rescission of the original agreement but their actions were indicative of continuing with the transaction and we believe the principles of *Hampton v. Suter*, Ky., 330 S.W.2d 402 (1959) enunciated by Commissioner Stanley govern here. He wrote:

(W)e believe Hampton was deceived as to the profits made in the previous year, but believe he had ample opportunity to learn from the books what the profits were; and not long afterward he did definitely learn the real fact. He was then put upon an election to abide by the contract and condone the deceit or to act with reasonable promptness to repudiate and seek to rescind the trade. But he retained and operated the business for some time after he learned or had ample opportunity to learn the true state of facts. Hampton is chargeable with having made an election to abide by the contract, so far as concerns that misrepresentation. Having once determined such an election, he could not thereafter be relieved of the obligations placed upon him by the terms of the contract, although such an election does not ordinarily deprive one of a right to claim damages. *Dunn v. Tate*, Ky., 268 S.W.2d 925.

Having resolved that there was no voidance of the May contract and that during the course of the dealings of the parties mutual modification thereto was made resulting in an uninterrupted transaction and relationship extending from 1968 to mid 1972, we conclude that a determination of the validity of the July agreement is unnecessary. The position that we are dealing with one transaction is fortified by the language of the second document coupled with the actions of the parties in that there is a sale followed by a consideration which extended over a period of four years.

■ Leonard Brush only continued its relationship with Allgier so that it could acquire Berry Soap by a means other than paying a set purchase price. Under these circumstances, we find it appropriate to consider all the instruments in the construction of this contract. 17 *Am.Jur.2d* Contracts § 264, at 668–669 (1964) *Breckinridge County v. Beard*, 233 Ky. 823, 27 S.W.2d 427 (1930). Furthermore, regardless of whether the July contract formed a binding agreement on its own, its terms retained the basic form of the May contract although they served to place Allgier on a better footing. Therefore, the September partial release becomes highly significant because in it Allgier releases Leonard Brush from all obligations to him or his estate except that after 9-1-68, appellant would receive one-half of the gross profits on the sales to Berry Soap customers only. This partial

release delineates the performance that Leonard Brush owed Allgier because of "the elementary general principle that either party to a contract may waive any of the provisions made for his benefit." 17 *Am.Jur.2d* Contracts § 390, at 835 (1964). Since that partial release referred specifically to the May contract clearly Leonard Brush's duty to perform accordingly extended for the period set out in the May contract. *Torian v. Hibbs' Ex'x*, 196 Ky. 784, 245 S.W. 502 (1922). We hold then that appellant does have a cause of action for those gross profits which he can show owed him under the partial release up until June 1, 1975.

We reverse the judgment below and remand the case for further proceedings consistent with this opinion.

All concur.