755 F.2d 1264
 J.I. HASS COMPANY, INC., and Seaboard Surety Company,
Plaintiffs-Appellees, Cross-Appellants,
v.
JONES-TEER, a joint venture of J.A. Jones Construction Co.,
and Nello L. Teer Co., Defendants-Appellants,
Cross-Appellees,
and
American States Insurance Co., Defendant-Cross-Appellee.
 Nos. 83-5719, 83-5761.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 27, 1984.
Decided March 6, 1985.
 
 John B. Tacke (argued), Hudson, Creyke, Koehler & Tacke, Washington, D.C., Richard C. Roberts, Whitlow, Roberts, Houston & Russell, Paducah, Ky., for defendants-appellants, cross-appellees.
 Alan W. Roles, Louisville, Ky., Robert S. Peckar (argued) Peckar & Abramson, Bruce D. Meller, Lawrence Levey, Hackensack, N.J., for plaintiffs-appellees, cross-appellants.
 John David Cole (argued) Cole, Harned & Broderick Bowling Green, Ky., for defendant-cross-appellee.
 Before EDWARDS* and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 PHILLIPS, Senior Circuit Judge.
 
 
 1
 This breach of contract litigation arose out of the construction by the United States Army Corps of Engineers of the Smithland Dam on the Ohio River, at Smithland, Kentucky. The prime contractor was Jones-Teer, a joint venture of the J.A. Jones Construction Company and Nello L. Teer Co., Inc. Jones-Teer was required by the provisions of its contract to do all work necessary to complete the project.
 
 
 2
 This case involves a subcontract between Jones-Teer and J.I. Hass Company (Hass) providing for the painting by Hass of the steel gates of the dam.
 
 
 3
 * Jones-Teer originally had engaged All-State Contracting Company to paint the gates. All-State commenced the painting work in 1977 and continued until the end of the painting season in 1978. All-State and Jones-Teer had a dispute concerning the performance of All-State's work and All-State removed itself from the project.[1] Hass contracted to do the painting job for $471,000.00. After Hass began painting, defects were discovered in painting work done by All-State. The Corps of Engineers required performance of a considerable amount of remedial work. Hass contended that it was entitled to extra compensation for corrective work. Jones-Teer declined to pay the claims of Hass for additional compensation, upon the ground that the subcontract required Hass to complete all the painting at its own expense.
 
 
 4
 Hass contends that before it began painting, it attempted to inspect the painting that had been done by All-State, but was unable to do so; and it was informed by Jones-Teer and by American States Insurance Company, surety for All-State, that the completed painting was satisfactory.
 
 
 5
 This litigation followed. Two suits were filed. Hass brought the first action in the United States District Court for New Jersey for a declaratory judgment that it was entitled to extra compensation under the subcontract for corrective work, and to damages for Jones-Teer's breach of contract for denying such payments. Hass filed the second action in the United States District Court for the Western District of Kentucky under the Miller Act, 40 U.S.C. Secs. 270a-270f, against Jones-Teer and the surety on its bond, claiming $500,000 in damages against Jones-Teer, and $500,000 in damages and one million dollars in punitive damages against American States Insurance Company, surety for All-State Contracting Company. Jones-Teer counterclaimed against Hass, on a charge of breach of contract, claiming $850,000 in damages.
 
 
 6
 The New Jersey action was transferred to the Western District of Kentucky, where the two suits were consolidated for trial before District Judge Edward H. Johnstone, sitting without a jury. Judge Johnstone filed comprehensive findings of fact and conclusions of law and a memorandum opinion.
 
 
 7
 Judge Johnstone held that the subcontract was a complete delegation to Hass of all the requirements for painting contained in the prime contract, including any and all corrective work necessary to conform to the provisions of the prime contract; that Hass assumed the risk of the corrective work; and that unforseen difficulties alleged by Hass were no excuse for noncompliance with the subcontract. The Court further held that Hass had affirmed the subcontract, after it learned the extent of the corrective work, by its performance of the profitable parts of the contract while refusing to perform unprofitable portions.
 
 
 8
 Judgment was rendered in favor of Hass against Jones-Teer for $17,920.00 for work performed by Hass under the subcontract before its termination, plus all unpaid amounts retained by Jones-Teer. All other claims of Hass were dismissed. The counterclaim of Jones-Teer against Hass and all other claims made by the parties were dismissed with prejudice.
 
 
 9
 Jones-Teer appeals and Hass cross-appeals. We affirm.
 
 II
 
 10
 The printed terms of the subcontract between Jones-Teer and Hass provided:
 
 
 11
 Subcontractor shall furnish all labor ... to prosecute and complete the work identified and described in Schedule A attached hereto ("the Work"), being a portion of the work required of Contractor under the General Contract (the "Contract") between Owner and Contractor. The Work shall be performed by Subcontractor in a good and workmanlike manner strictly in accordance with the contract documents listed in Schedule B and incorporated herein by reference.
 
 
 12
 Schedule A was a typed insertion which defined "work" as follows:
 
 
 13
 Furnishing all labor, materials (except as noted in Schedule F), equipment, supplies, insurance, supervision, etc., to complete the surface preparation and field painting work for Bid Item 66, in strict accordance with the contract documents, completing the Work which was begun by All-State Contracting Company under Subcontract No. 74-285-014, starting with the job conditions left by All-State and which were existing as of May 7, 1979.
 
 
 14
 The printed terms of the subcontract also provided that "Subcontractor shall be bound by all the terms of the [general] Contract and assumes all the obligations of Contractor as stated therein which are applicable to this subcontract."
 
 
 15
 Section 7(d) of the prime contract provided:
 
 
 16
 All material and work covered by progress payments made shall thereupon become the sole property of the Government, but this provision shall not be construed as relieving [Jones-Teer] from the sole responsibility for all material and work upon which payments have been made or the restoration of any damaged work, or as waiving the right of the Government to require the fulfillment of all of the terms of the contract.
 
 
 17
 Judge Johnstone construed the foregoing language of the subcontract and prime contract as follows:
 
 
 18
 As Hass progressed in the painting, it was determined by the Corps that much of the work of All-State required repair. The parties disagreed as to whether Hass was required under the subcontract to correct the work of the prior painter. Jones-Teer contends that Hass was to complete the work begun by All-State, which was to produce a painted dam; since Hass was to start with existing job conditions, corrective work was required in order that the painting could be completed. Hass contends that since it was to start with the conditions existing on May 7, 1979, its obligation was only to go forward with, i.e., complete, the job begun by All-State....
 
 
 19
 We preliminarily ruled at the close of the first phase of the trial that the subcontract was ambiguous with respect to the scope of work and, based upon the evidence presented, that Hass was responsible only for going forward with the painting. Jones-Teer, in its post-trial brief, has requested that we reexamine our ruling. We have done so, and now find that the scope of work stated in the subcontract is unambiguous.
 
 
 20
 Hass was to complete the painting, in accordance with the Corps' specifications, starting with the job conditions left by the prior subcontractor. To place upon the word "complete" a mere quantitative requirement, as Hass contends with its go forward connotation, would be unreasonable in light of the qualitative mandates imposed by the incorporated specifications. Clearly, the work could not be completed unless the specifications were satisfied. Thus, whether merely going forward with the work from the point where the job was started would comply with the language of schedule A depended simply upon whether following such a course would produce a dam painted in accordance with the specifications. The requirements for the job were set; only the amount of work needed to meet these requirements could vary.
 
 
 21
 * * *
 
 
 22
 The scope of work requirement of the subcontract is clear; Hass was to do all that was required in order for there to be a dam painted pursuant to the incorporated specifications. Hass' evidence would not interpret this language but would vary it. This is improper. Rudd-Melikian, Inc. v. Merritt, 282 F.2d 924 (6th Cir.1960); Codell Const. Co. v. Commonwealth, 566 S.W.2d 161 (Ky.App.1977).
 
 
 23
 We affirm the District Court's construction of the contracts.
 
 III
 
 24
 Hass originally pleaded fraud by Jones-Teer in the negotiation of the subcontract. Judge Johnstone rejected this contention. The brief of Hass filed in this Court states: "Hass now accepts the trial court's determination of misrepresentation and not of fraud with regard to the formation of the contract."
 
 
 25
 Judge Johnstone found that the status of the painting previously done by All-State Contracting Company was misrepresented by Jones-Teer and American States "however innocently." The District Court opinion proceeded with this language:
 
 
 26
 Our discussion cannot end merely with a finding of misrepresentation. Despite the fact that Hass entered into the subcontract with the belief that the conditions of the job were as reflected in the percentages, it learned in late May and early June that problems definitely existed with gate one. See Foreman's Diary entries for May 30 and June 5, 1979, Plaintiff's Exhibit 77. Beginning in June it undertook extensive remedial work on this gate. Also in this month work was done on gate five; plaintiff presented testimony that this too was a gate which required reworking. In July Hass learned of deficiencies in gate two. The issue of remedial work was discussed with Jones-Teer at job-site meetings in June and July, and Hass founded its stance upon the percentages. Jones-Teer's response was that the subcontract provided that the job was taken on an "as is, where is" basis and that remedial work was plaintiff's responsibility.
 
 
 27
 Clearly by August Hass knew or had reason to know of any misrepresentation, or at least that it was mistaken as to the amount of work to be done. We find that when Hass manifested its assent to the subcontract it did not, because of the misrepresentation, undertake to correct the number of deficiencies which were appearing. Restatement, Second, Contracts Sec. 19(c). Thus, because the subcontract was voidable, plaintiff was faced with a choice. It could either disaffirm the agreement due to the misrepresentation and be restored to the status quo ante, or it could affirm the contract, perform the painting, and later seek damages. See Sanford Construction Co. v. S & H Contractors, 443 S.W.2d 227 (Ky.1969); Dunn v. Tate, 268 S.W.2d 925 (Ky.1954); Allgier v. Brush, 551 S.W.2d 262 (Ky.App.1977). However, it could not avoid part and ratify part of the contract, Restatement, Second, Contracts Sec. 383, and plaintiff had but one irrevocable election.
 
 
 28
 This holding is in accord with the law of Kentucky. See Hampton v. Suter, 330 S.W.2d 402 (Court of Appeals of Kentucky, 1959); and Dunn v. Tate, 268 S.W.2d 925 (Court of Appeals of Kentucky, 1954). See also Restatement (Second) of Contracts Secs. 381, 383.
 
 
 29
 In October 1979, Hass' counsel gave notice to Jones-Teer that Hass thereafter would perform only "contractual" painting and would not perform any of the remedial work until provision was made for payment therefor. On July 7, 1980 Jones-Teer terminated Hass' subcontract. The District Court found as follows:
 
 
 30
 We find that Jones-Teer's termination of Hass was justified. The alternative open to defendant to get the painting done was immediately to pay plaintiff the sums it requested. However, to hold that Jones-Teer was required to pay extra compensation on the contract would be tantamount to a finding that the contract was to be interpreted as Hass alleged. It is because the subcontract cannot be so read, that Hass, under the law as we understand it, was required to go forward with the contract or to concel it. The position taken by plaintiff, that it would only perform the more profitable portions of the subcontract, made such a choice unnecessary, and thus we find it to be a path which was not open to Hass.
 
 
 31
 This Court affirms the foregoing findings of the District Judge.
 
 IV
 
 32
 Hass contends that the judgment of the District Court should be reversed except as to the award of $17,920 plus any unpaid retainage and the judgment dismissing the claim. Hass asks this Court to remand the case to the District Court with directions to enter a judgment that it recover from Jones-Teer $252,317.22 plus interest.
 
 
 33
 The following arguments are made in support of this contention:
 
 
 34
 (1) The trial court erred as a matter of law in its finding that the scope of work stated in the subcontract is unambiguous.
 
 
 35
 (2) The trial court erred as a matter of law in finding that Hass' options, upon discovery of the misrepresentation, were limited to an immediate disaffirmance of the contract or the completion of full performance at its own cost.
 
 
 36
 (3) The trial court erred as a matter of law in finding that Hass was not entitled to quantum meruit damages for work performed beyond the scope of its contract.
 
 
 37
 (4) The trial court erred as a matter of law in its finding that Hass' delay past 1979 in seeking recission of the contract was unreasonable.
 
 
 38
 (5) The trial court's finding that Hass breached the subject contract was erroneous as a matter of law and contrary to the evidence.
 
 
 39
 (6) The trial court erred as a matter of law in its finding that Jones-Teer's statements concerning a funding arrangement for the disputed work in 1980, made to induce Hass to return to the job, were not fraudulent.
 
 
 40
 (7) The trial court erred as a matter of law in its finding that Hass was entitled to recover only $17,920.00 plus retainage.
 
 
 41
 All of these arguments have been considered. This Court finds them to be without merit for the reasons stated in the opinion of Judge Johnstone.
 
 
 42
 It is to be noted that Hass is not a novice in industrial painting. It has more than 85 years of experience, with offices in New York, New Jersey, Indiana and Canada, and has performed large painting contracts in 44 states and foreign countries. Its projects include painting the Mackinac Bridge, the Chesapeake Bay Bridge, St. John's Dam in New Brunswick and the Aswar Dam in Texas.
 
 V
 
 43
 Jones-Teer contends that the failure of the District Court to award damages against Hass on its counterclaim was erroneous as a matter of law. The District Court found that Jones-Teer had not proved by competent evidence the losses claimed by it from Hass' repudiation of the contract. Upon consideration of the record, this Court concludes that the District Court did not commit reversible error in denying any relief to Jones-Teer under its counterclaim.
 
 
 44
 All other contentions of the parties attacking the judgment of the District Court have been considered and are found to be without merit.
 
 
 45
 AFFIRMED. No costs are taxed. The parties will bear their own costs on this appeal.
 
 
 
 *
 Honorable George Edwards took senior status January 15, 1985
 
 
 [1]
 The dispute between Jones-Teer and All-State was settled by arbitration